January 8, 1993 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-2226

 THOMAS D. HITE,

 Petitioner,

 v.

 NATIONAL TRANSPORTATION SAFETY BOARD, ET AL.,

 Respondents.

 

 ON MOTION FOR STAY OF AN ORDER

 OF THE NATIONAL TRANSPORTATION SAFETY BOARD, ET AL.

 

 Before

 Torruella, Cyr and Stahl,
 Circuit Judges.
 

 

 Lawrence B. Smith on Motion for Stay, for petitioner.
 
 Joseph A. Conte on Response in Opposition to Petitioner's
 
Motion for Stay, for respondents.

 

 

 Per Curiam. Petitioner moves for a stay, pending
 

review, of an order issued by the National Transportation Safety

Board ["NTSB"] affirming revocation of his air transport pilot's

certificate. We conclude that petitioner has not shown

sufficient reason for such extraordinary relief, and so we deny

the stay.

 Petitioner's certificate was initially revoked by the

Federal Aviation Administration ["the Administrator"] in June,

1989, following an incident in which an aircraft he was piloting,

carrying a number of high school athletes and their coach,

experienced severe control difficulty and was forced to return to

its take-off point in Hyannis. The Administrator attributed the

incident to petitioner's misfeasance and recklessness in

operating an unairworthy aircraft in violation of a number of

regulations. The Administrator claimed that the plane was

improperly loaded beyond its weight and center of gravity limits

when, shortly before take-off, the plane's tail fell back and hit

the ground sharply, causing damage to the tail and controls.

Allegedly petitioner was present when this occurred, but he then

took the plane into the air without testing the controls or

correcting its out-of-balance condition. 

 Petitioner denied the charges. He appealed to the NTSB,

thus gaining an automatic stay of the revocation order under 49

U.S.C. app. 1429(a). An evidentiary hearing was held before an

administrative law judge ["ALJ"], who credited the passengers'

testimony over petitioner's version, finding sufficient proof for

all but one of the violations charged. 1 Petitioner then

appealed to the full Board, which reviewed the record and

affirmed in an opinion issued August 10, 1992. The Board ordered

revocation of petitioner's certificate to begin within 30 days

from the date of service of its order.

 The NTSB also denied petitioner's subsequent motion for a

further stay of the revocation order pending this appeal, in

accordance with the agency's long-standing practice in revocation

cases. As explained by the NTSB, revocation, unlike suspension,

"is based on the conclusion that the airman's conduct is

sufficiently egregious as to demonstrate a lack of the

qualifications required of a certificate holder." Administrator
 

v. Hite, N.T.S.B. Order EA-3701, (Oct. 23, 1992) (quoting
 

Administrator v. Balestra, N.T.S.B. Order EA-3065, 1990 NTSB
 

LEXIS 3 (Jan. 9, 1990)). Denial of a stay in such cases is

premised on the belief that "aviation safety and the public

interest would be compromised by permitting an individual whose

conduct demonstrates that he lacks the necessary care, judgment

and responsibility to continue, pending judicial review, to

exercise the privileges of a certificate he has been found unfit

to hold." Administrator v. Haney, N.T.S.B. Order EA-3357, 1991
 

 

1. On this motion we have not been provided with a copy of the
hearing transcript nor the ALJ's opinion, and so we rely on the
description of the record in the Board's affirming decision. The
one charge which the ALJ did not find to be supported by the
evidence was that petitioner had not promptly reported the
incident. 

 -3-

NTSB LEXIS 117 (July 16, 1991); see also Administrator v.
 

Palmersheim, N.T.S.B. Order EA-3421, 1991 NTSB 204 (Oct. 22,
 

1991); Administrator v. Damsky, 3 N.T.S.B. 557 (1977).
 

 Petitioner urges that (1) under the Federal Aviation Act

(the "Act") he is entitled to an automatic stay of the NTSB order

during the pendency of his appeal in this court, and (2) in the

alternative, this court should exercise its equitable powers

under Fed. R. App. P. 18, to grant a stay.

 (1) Argument for an Automatic Stay 
 

 Under 609 of the Act, 49 U.S.C. app. 1429(a), when the

Administrator issues an order amending, modifying, suspending or

revoking a certificate,2 the certificate holder is entitled to

notice, an opportunity to answer, be heard, and a right to review

by the NTSB.3 During these proceedings, there is an automatic

stay of the effectiveness of the Administrator's order. An

exception to the automatic stay is allowed only if the

Administrator advises the NTSB that an "emergency" exists. In

that event the Administrator's order is given immediate effect,

and the NTSB's review is expedited, requiring the agency to

finally dispose of the case within sixty days. 

 

2. Section 1429 is directed to the Secretary of Transportation,
but under 49 U.S.C. 106(g), all duties and powers of the
Secretary relating to aviation safety are carried out by the FAA
Administrator. 

3. The NTSB treats the initial FAA order much as a civil
complaint. After the preliminaries, there is an evidentiary
hearing before an ALJ, and a right to review by the full Board.

 -4-

 Petitioner perceives in the design of 1429(a) a unique

procedure extending to appeals to this court. He argues that the

stay of the Administrator's order, automatically imposed in most

cases pending an evidentiary hearing and review by the NTSB, also

automatically stays any final NTSB order appealed to this court.

Petitioner gleans support for this reading of the Act in the lack

of any direct statutory statement as to how the automatic stay

terminates, combined with the last sentence of 1429(a), which

allows for judicial review of NTSB orders, "under the provisions

of 1486."4 According to petitioner, this means that at the

agency level, 1429(a) vests "exclusive power" to "deny" any

stay of the NTSB's final orders in the Administrator, who makes

the decision by declaring an "emergency" before the NTSB hearing.

 Petitioner has pointed to no authority for this

interpretation, nor any direct evidence of Congressional purpose.

He simply infers from the absence of any explicit statement to

the contrary that the NTSB has no power to effectuate its own

orders, even to protect the public interest and safety, during

oft-times protracted appeals. 

 

4. Title 49 U.S.C. app. 1486 shifts to this court exclusive
power over the orders of the NTSB and Administrator once an
appeal is filed. After notice to the agency, "interlocutory
relief may be granted by a stay" or other appropriate mandate.
The procedure envisioned by this section also seems inconsistent
with the assumptions underlying petitioner's argument about the
meaning of 1429(a). 

 -5-

 We reject petitioner's counter-intuitive interpretation.

We read the statute, instead, as embracing traditional and common

understandings. By imposing an automatic stay during fact-

finding, the statute preserves the normal balance between the

individual's due process rights and the public interest in most

cases, subject to the Administrator's "emergency" declaration and

an expedited hearing in exceptional circumstances. Cf. Gallagher
 

v. NTSB, 953 F.2d 1214, 1224-25 (10th Cir. 1992) ( 1429 creates
 

an extraordinary class of emergency order petitioners who lose

the usual procedural rights during the 60-day period in order to

protect the public safety). We have no reason to believe that

Congress intended to denude the NTSB of the ability to protect

the public interest in the larger number of cases, once the full

panoply of procedural rights had been accorded. Other courts,

too, have assumed the NTSB's role in protecting the public. Cf.
 

Grant v. NTSB, 959 F.2d 1483, 1485 (9th Cir. 1992) (since
 

predominant purpose of 1429 is to promote air safety, in

emergency cases ways must be sought by NTSB to vindicate

individual's right to fair decisional process without impairing

statute's mandate). 

 In accordance with usual practice, the NTSB's final order

of revocation, following a fact-finding hearing and

administrative review is fully effective on appeal unless stayed

by that agency or this court. See Administrative Procedure Act,
 

5 U.S.C. 705 (agency has authority to postpone effective date

 -6-

of its own order when "justice so requires"); Fed. R. App. P. 18

(application for a stay of agency action must be made in first

instance to agency). 

 Petitioner's related argument that he is entitled to a

stay because the NTSB did not publish a rule in the Code of

Federal Regulations stating the agency's authority to stay its

own orders, is also specious. Publication in the Federal

Register is not required where the practice, as here, is

traditional, longstanding, and follows the course of events

clearly contemplated in the Administrative Procedure Act and the

Federal Aviation Act. See Rochna v. NTSB, 929 F.2d 13, 15-16
 

(1st Cir.), cert. denied, 112 S. Ct. 305 (1991). Petitioner had
 

actual notice of the policy and full opportunity to take

advantage of it, which he in fact did, by moving for a stay

before the NTSB. Thus there is no plausible due process claim.

Rochna, 929 F.2d at 16. 5 
 

 (2) Argument for a Stay under Fed. R. App. P. 18
 

 Petitioner also fails to make an adequate showing for the

extraordinary remedy of a stay pending appeal under Fed. R. App.

P. 18.6 Motions for a stay of an agency order are governed by

 

5. This is the same argument we addressed in Rochna.
 
Petitioner's counsel here also represented the petitioner in that
case, and in other cases cited therein, where the courts rejected
the same argument in identical fashion. 

6. Petitioner does not urge upon us the authority of 49 U.S.C.
app. 1486, although it expressly provides parallel authority to
this court to stay NTSB orders for "good cause shown". As the
factors considered would be the same as under Rule 18, in this

 -7-

the same considerations as motions for an injunction pendente

lite. 9 James W. Moore, et. al., Moore's Federal Practice, 

218.02[2] at 18-5 (2nd Ed. 1992); Cuomo v. United States Nuclear
 

Regulatory Comm'n, 772 F.2d 972, 978 (D.C. Cir. 1985); see also
 

Conservation Law Found., Inc. v. Andrus, 617 F.2d 296 (1st Cir.
 

1979) (preliminary injunction); Providence Journal v. FBI, 595
 

F.2d 889 (1st Cir. 1979) (stay of district court order). It is

the moving party's burden to demonstrate the need for a stay in

light of (1) the likelihood that the movant will prevail on the

merits of the appeal; (2) the likelihood he will be irreparably

injured absent a stay; (3) the possibility of harm to other

persons interested in the proceedings; and (4) the public

interest. Cuomo, 772 F.2d at 974; Washington Metro. Area Transit
 

Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir.
 

1977); Eastern Air Lines, Inc., 261 F.2d at 830. The relative
 

weight assigned to each factor necessarily varies from case to

case. Cuomo, 772 F.2d at 974. 
 

 The public's interest in air safety is of obvious and

paramount importance in this case. Petitioner ingenuously urges

that safety is not in issue, however, because the Administrator's

 

case there appears to be no practical reason to prefer one over
the other. See Eastern Air Lines, Inc. v. Civil Aeronautics Bd.,
 
261 F.2d 830 (2d Cir. 1958) (citing factors, denying stay under
predecessor version of Act,); Air Line Pilots Ass'n Int'l v.
 
Civil Aeronautics Bd., 215 F.2d 122 (2d Cir. 1954) (denying
 
interlocutory stay of implementation of special air regulation). 

 -8-

choice not to use his emergency power to suspend petitioner's

certificate in advance of the NTSB review "certified" that there

was no risk to the public. This reasoning exaggerates and

distorts the meaning of the Administrator's early processing

decision. Especially in a case where the facts are in dispute,

if any relevant inference can later be drawn from the

Administrator's processing choice, it is only that the

Administrator chose not to implement his order until the facts

had been fully aired before the NTSB. 

 Aside from the public safety issue, petitioner's claims

under the remaining factors are not convincing. As to

irreparable harm to petitioner and harm to others, petitioner

relies solely upon his counsel's affidavit, which advises that

petitioner's only source of support is a "one-man, one-aircraft

on-demand air-taxi service." This service, counsel states, was

put together by a "small group of businessmen, who require air-

transportation from time to time, with the specific purpose of

having [petitioner] as their pilot." Even giving full credit to

this recitation as an accurate depiction of the facts,

nevertheless we do not understand how denial of a stay will cause

petitioner or his unnamed business associates "irreparable"

injury. "The key word in this consideration is irreparable. Mere
 

injuries, however substantial ... are not enough." Wisconsin Gas
 

Co. v. Federal Energy Regulatory Comm'n, 758 F.2d 669 (D.C. Cir.
 

 -9-

1985) (quoting Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d
 

921, 925 (D.C. Cir. 1958)). 

 We do not doubt that economic dislocation may accompany

revocation of petitioner's certificate, perhaps necessitating the

hiring of a substitute pilot. And we can imagine circumstances

in which some of the loss will not be readily compensable. But

this is not the type of injury which would justify the

extraordinary appellate intervention requested here, especially

in the absence of any showing of a high probability of later

success on the merits of this appeal. Compare Providence
 

Journal, 595 F.2d at 889 (where failure to stay district court's
 

disclosure order would so utterly destroy the status quo as to

render any later appeal moot, but grant of stay would cause

relatively slight harm, appellants need not show an "absolute

probability of success"). 

 Petitioner presents here only one of the legal arguments

which he says will lead to sucess on the merits of his appeal.

He says that revocation of his certificate was improper because

it was imposed as a "punishment," and not for "lack of

qualification" to hold the certificate. "Lack of qualification,"

is the standard which the Board uses in determining when

revocation is appropriate to insure "safety in air commerce ...

and the public interest." Proud v. Civil Aeronautics Bd., 357
 

F.2d 221, 224 (7th Cir. 1966). 

 -10-

 As we understand it on this abbreviated review, this

argument too, may misapprehend the relative roles of the

Administrator and NTSB and the means each uses to effect the

regulatory purpose.7 But whatever the legal merit, the scant

record before us does not support petitioner's statement of the

issue. Instead, the initial FAA order recites that because of

the listed safety violations the Administrator "has determined

that safety in air commerce ... and the public interest require

the revocation." And the NTSB expressly held that denial of the

requested stay was predicated on the conclusion that petitioner's

conduct demonstrated "a lack of the qualifications required of a

certificate holder." 

 

7. The agencies are generally accorded broad discretion to
choose the proper remedy to effect the regulatory purpose,
unconstrained by the semantical quibbling which petitioner's
argument may suggest. See, e.g., Hill v. NTSB, 886 F.2d 1275,
 
1281 (10th Cir. 1989) (the Act gives the FAA "broad discretion to
choose between ... section 609 certificate action and section 901
civil money damages," quoting from Go Leasing Inc. v. NTSB, 800
 
F.2d 1514 (9th Cir. 1986)); Twomey v. NTSB, 821 F.2d 63 (1st Cir.
 
1987) (FAA's emergency order revoking pilot's certificate for
material misstatement of fact was not an abuse of discretion,
since FAA was entitled to conclude that there was a connection
between the pilot's falsehood and danger to public safety);
Proud, 357 F.2d at 224 (agency is given broad discretion to
 
choose among certificate remedies); Pangburn v. Civil Aeronautics
 
Bd., 311 F.2d 349, 354-55 (1st Cir. 1962) (agency's consistent
 
exercise of its broad discretionary authority to order
certificate suspensions as a "sanction" under 1938 Act need not
be changed because of language in 1958 Act providing for
certificate suspension or revocation if required by "safety" and
"public interest," since deterrent suspensions also serve the
stated purposes).

 -11-

 In sum, petitioner has not demonstrated sufficient grounds

for a stay of the NTSB order pending appeal, and so his motion is

denied.
 

 -12-